**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE**

**IN AND FOR NEW CASTLE COUNTY**

SHERYL OKIN and IRWIN OKIN,    )
           )
    Plaintiffs-below,        )
    Appellants,           )
           )
      v.             )    C.A. No. CPU4-14-002476
           )
ELSIE E. CONTE,        )
           )
    Defendant-below,       )
    Appellee.           )

Sheryl and Irwin Okin
15 Bridle Brook Lane
Newark, DE 19711
*Appellants, Pro se*

Thomas B. Ferry, Esquire
299 East Main Street
Newark, DE 19711
*Attorney for Appellee*

**<u>DECISION AFTER TRIAL</u>**

**RENNIE, J.**

## INTRODUCTION

This is an appeal from a July 24, 2014 decision, where the Justice of the Peace Court No. 13 found in favor of Defendant-below, Appellee Elsie E. Conte ("Conte"). The case is a breach of contract action that arises from Conte's alleged failure to disclose a material defect in connection with the sale of residential property to Plaintiffs-below, Appellants Sheryl and Irwin Okin ("S. Okin", "I. Okin", collectively "Appellants"). In addition to the alleged failure to disclose, Appellants allege that Conte fraudulently concealed defects in the property's basement.

On September 2, 2014, Appellants filed the Complaint on Appeal alleging that the seller's disclosure form required by Delaware's Buyer Property Protection Act[1] did not disclose problems which existed prior to the purchase of the property and subsequently required repair and replacement.[2] Appellants seek damages totaling $19,388.00. On September 17, 2014, Conte filed an Answer denying the substantive allegations of the Complaint on Appeal and asserted affirmative defenses. Conte seeks an order affirming the Justice of the Peace decision-below. Trial was held on July 8, 2014. At the close of evidence, the Court reserved decision. This is the Court's Opinion on the relief sought by the parties.

## FACTUAL BACKGROUND

The testimony in this matter is at times conflicting and disconnected. After parsing through the testimony, the Court finds the following facts to be credible. Appellants, who previously lived in Long Island, New York, sought to purchase a home in Delaware. In April 2012, Appellants saw Conte's property listing at 15 Bridlebrook Lane in Newark, DE ("the property"). Conte's listing through her realtor, Patterson Schwartz, described the property as

---

[1] 6 *Del. C.* § 2570 *et seq.*
[2] Appellants allege that the Property required waterproofing, addition of a new French drain, mold removal, cedar wood closet replacement, and replacement of the drain lines in the basement.

2

having serene creek views, a cedar storage closet and move-in ready.[3] Appellants contacted Patterson Schwartz and scheduled a viewing of the property.

Appellants initial impression was that the property met their needs. On April 19, 2012, the parties executed an agreement of sale ("the agreement") for the property.[4] The agreement called for all pre-settlement inspections, written reports of material defects and requests for repair to be completed and presented to Conte by May 1, 2012.[5] Conte's response was due by May 3, 2012, with all negotiations to be completed by May 5, 2012.[6] Settlement on the property was scheduled for May 31, 2012.

On April 19, 2015, Conte also presented the Seller's Disclosure form to Appellants.[7] The seller's disclosure report filled out by Conte indicated there was no damage to the drainage system, basement, or crawlspace.[8] Moreover, the form reported no damage to the sewage system.[9] S. Okin testified that Appellants relied exclusively on the seller's disclosure report in making their decision to purchase the property.

Appellants contracted with Reliable Home Inspection Service ("RHI") to perform a pre-closing inspection on the property.[10] On April 24, 2012, Robert Matthews[11] inspected the property and provided a written report of his findings.[12] Matthews described his inspection as "generalist in nature." When Matthews inspected the property's basement, it appeared to have

---

[3] *See* Joint Ex. 1.
[4] *See* Joint Ex. 2.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *See* Joint Ex. 2, ¶ 73. The addendum to the disclosure states that a French drain was installed in 1965 and replaced in the late 1970s. An addition was later added in 2010.
[9] *Id.* at ¶ 94
[10] Matthews testified that in most instances, the inspector goes through the property with the customer. Then, the inspector provides a report outlining defects and the corresponding recommended repairs.
[11] Matthews is employed as a property inspector for RHI.
[12] *See* Joint Ex. 4.

been recently painted. He could not see any water stains or any major challenges. Matthews stated that the existence of fresh paint rendered the possibility of finding any defect unlikely, but without more, he could not conclude that Conte was attempting to conceal a defect. After Matthews' inspection, Appellants sought two repairs, entered into negotiations with Conte, and reached an agreement for repairs, which were satisfactorily made prior to the settlement date.

According to S. Okin, the basement was empty prior to the closing. The property had basic furnishings, and she observed that the majority of the house was spot-painted. However, S. Okin described the basement as in pristine condition. On May 31, 2012, the day of settlement, Appellants performed a final walkthrough of the property. Other than a minor water blockage issue in the master bathroom, the walkthrough did not show any issues.

According to I. Okin, Appellants first realized there was an issue in November 2012, six months after the closing. The property came with a handmade cedar closet, which was placed in the basement for the purpose of storing "off-season" clothing.[13] Within a few months after they moved in, Appellants placed various winter clothing in the cedar closet. In November 2012, when Appellants went to retrieve the clothes, they found them full of mold. Appellants took the clothes to a drycleaner to remove the mold; however, only certain items survived.[14]

After the discovery of the mold, Appellants solicited Robert Shaw Contractors ("Shaw") to provide an estimate to repair the cedar closet. However, the inspection was not performed until December 30, 2013, more than a year after the discovery of the problem.[15] According to the estimate, Shaw removed the cedar closet and observed water "running down the walls and onto

---

[13] *See* Joint Exhibit 1. The cedar closet is listed in the property description as furniture which will pass to the new owners.
[14] *See* Pl.'s Ex.1. Appellants offered receipts purporting to document the occurrence; however, the receipts do not indicate why the items were cleaned.
[15] *See* Pl.'s Ex. 2.

the wood base [of the cedar closet], then onto the concrete floor."[16] Additionally, the estimate states that when the closet was removed, mold was growing behind the closet walls and blockwalls.[17] Finally, the Shaw estimate states that the cedar closet needed to be demolished and rebuilt with materials that would not harbor mold. Shaw priced the job at $2,200.00.[18] Ultimately, Appellants decided against replacing the cedar closet and the entire cedar closet was lost due to the mold infestation. I. Okin testified that when Shaw reported that the source of the issue was water running down the walls – likely the product of a pipe leaking behind a basement wall – they were surprised because Conte represented that the basement had waterproofing services performed in 2010 by B-Dry Waterproofing, LLC.[19]

In September 2013, more than a year after the May 31, 2012 settlement, Appellants began to notice water accumulation in the basement. Appellants contracted with Thompson's Waterproofing, LLC to have a new French drain and second sump pump installed in the basement, totaling $8,300.00.[20]

According to Conte, the basement was painted in the 1970s and again in the 1980s. Additionally, when Conte had B-Dry waterproof the basement in 2010 after the sump pump was installed, the wall was repainted.[21] Conte testified that the Seller's disclosure form (specifically the paragraphs relating to the basement's condition as well as the disclosure's addendum) was accurate at the time the disclosure was made.[22] Additionally, the Appellants had an inspection performed by an inspector of their choosing and negotiated certain repairs, which Conte

---

[16] Pl.'s Ex. 2.
[17] Id.
[18] Id. Also, See Pl.'s Ex. 3 – 4. Exhibit 4 shows the cedar closet and basement with no issues as of June 26, 2013. Although the pictures in Exhibit 3 show the closet after the discovery of mold, no testimony as to the date of the Exhibit 3 pictures was presented to the Court.
[19] See Joint Ex. 8.
[20] See Pl.'s Ex. 5.
[21] See Joint Ex. 8.
[22] See Joint Ex. 2, ¶ 72-74

completed.[23] Appellants did not request repairs to the French drain system or the cedar closet. In fact, Conte testified that she was not aware of the basement's issues until Appellants filed the instant suit. Regarding the cedar closet, Conte testified that it was built in the 1980s. During her ownership of the property, Conte stored her off-season clothes in it. When she moved out in May 2012, approximately one week before closing, Conte emptied the closet and did not find mold.

Finally, Timothy Conte[24] testified that he painted the basement when he was in high school in 1975. His late step-father painted the basement again in the late 1980s, and as far as he knew, that was the last time the basement was painted. However, Appellants asked him whether he testified in the proceeding-below that he painted the basement with Dry-Lok paint within one year of the sale to Appellants. He replied that he did not. In light of the inconsistent testimony of Mr. Conte, the Court posed a direct question to Mr. Conte asking him whether he painted the basement at anytime within two years prior to the sale of the property. Mr. Conte definitively answered that he did not.

## DISCUSSION

To prevail on a claim for breach of contract, the plaintiff must establish by a preponderance of the evidence that: (1) a contract existed between the parties; (2) the defendant breached an obligation imposed by the contract; and (3) the plaintiff suffered damages as a result of that breach.[25]

The parties agree that a contract existed between Appellants and Conte. Section 31 of the agreement specifically incorporates the Disclosure into the agreement. The parties dispute,

---

[23] *See* Joint Ex. 7. Appellants negotiated for the reinstallation of a well-water conditioning system, electrical work, and repairs to the property's siding.

[24] Mr. Conte is the son of Conte, and has knowledge of the events surrounding the closing as well as general information concerning the condition of the basement.

[25] *Gregory v. Frazer*, 2010 WL 4262030, *1 (Del. Com. Pl. Oct. 8, 2010); *VLIW Technology, LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003).

6

however, whether Conte breached the contract by failing to make the required disclosures. In other words, the dispositive issue is whether Conte knew there were material defects in the property's basement and failed to adequately disclose these defects as required by the Buyer Property Protection Act.

## A. Buyer Property Protection Act

Conte contends that she truthfully and completely disclosed all information relating to the basement's water infiltration issues known to her at the time the disclosure was made in accordance with the Delaware Buyer's Property Protection Act.[26] Additionally, Conte noted that Appellants inspected the property at least four times prior to closing and negotiated certain repairs, which she made.

In response, Appellants counter that Conte knew of the basement's issues and did not disclose its defects. Appellants further allege that they could not discover the defect because it would not have been discovered but for their removal of the cedar closet – affixed to a basement wall – for inspection.

Delaware's Buyer Property Protection Act requires a seller transferring residential real property to "disclose, in writing, to the buyer, agent and subagent...all material defects of that property that are known at the time the property is offered for sale or that are known prior to the time of final settlement."[27] "The disclosure is neither a warranty nor a substitute for any inspections or warranties that either party may wish to obtain."[28] The disclosure merely "serves as a good faith effort by the seller to comply with the requirements of the Buyer Property Protection Act, and upon its completion, it becomes part of the purchase agreement."[29] Thus, "a

---

[26] 6 *Del. C.* §§2750 *et seq.*
[27] 6 *Del. C.* § 2572.
[28] 6 *Del. C.* § 2574 (as quoted in *Dunn v. Vaudry*, 2011 WL 4638266, at *6 (Sept. 30, 2011)).
[29] 6 *Del. C.* § 2573 -74.

7

seller's failure to disclose known material defects qualifies as a breach of the real estate sale contract by the seller."[30]

<u>Water Filtration Issues & Cedar Closet</u>

The Court finds by a preponderance of the evidence that Conte disclosed all material defects relating to water filtration in the basement. The seller's disclosure form adequately informs Appellants of all occurrences of water infiltration and Conte's subsequent repair efforts to eliminate the issues.[31] If the repairs were not performed correctly, Appellants have the burden to show that Conte had knowledge of the defective repair and did not disclose it. Here, Appellants presented no such testimony or evidence that meets this burden.

In *McCoy v. Cox*, the court held that a leak in a shower pan that was known to the sellers to have occurred in the past was not a material defect subject to mandatory disclosure because the seller corrected the problem at least a year prior to settlement and had not experienced any leaks since the repair.[32] The court also found that there was not enough evidence in the record to establish that the sellers knew of a subsequent leak after they performed the repair one year before settlement.[33]

Here, the record demonstrates that Conte disclosed (1) her knowledge of prior leakage problems in the basement, (2) the fact that she repaired them nearly two years before settlement, and (3) that she had not experienced any other known leaks since the repair. Moreover, Appellants testified that they inspected the home in its entirety at least three times. Appellants had an independent inspection performed, and no defects relating to water accumulation in the

---

[30] *McCoy v. Cox*, 2007 WL 1677536, at *1 (Del. Super. Jun. 11, 2007).
[31] *See* Joint Ex. 2, ¶¶47-50; 72-74.
[32] *McCoy*, at *7.
[33] *Id.*

8

basement were reported.[34] Additionally, Conte testified that she was not aware of the basement issues until Appellants brought the instant action. Thus, based on this record, Appellants have not met their burden to show that the leak existed prior to the settlement, or that Conte failed to disclose its existence.

### French Drain/Sump Pump Replacement

The Court finds by a preponderance of the evidence that Conte disclosed all pertinent information relating to the French drain. In the seller's disclosure and addendum, paragraph seventy-three states that the French drain was installed in 1965, replaced in the late 1970s, and Conte had an addition to the existing system installed in 2010.[35]

Appellants have not presented any evidence which persuades the Court that Conte failed to disclose a defect relating to condition of the sump pump, other than presenting testimony that an additional sump pump was required to be installed. Appellants have failed to show that Conte did not disclose a defect in either system. Therefore, the Court finds that Conte's seller disclosure form satisfies the requirements of the Buyer Property Protection Act.

### B. Fraudulent Misrepresentation

Appellants argue that Conte used Dry-Lok paint in the basement to reduce moisture because she was aware of the water problems existing at the time of sale. They further argue that the existence of fresh paint in the area where the leak occurred suggests that Conte knew of the leak's existence, and rather than disclose it, she painted over it, preventing its discovery during reasonable inspections performed.

Conte counters that in completing the statutorily-mandated Disclosure, Appellants were presented with truthful information regarding the history of water leakage due to the property's

---

[34] *See* Joint Ex. 4.
[35] *See* Joint Ex. 2, ¶¶ 73-74.

9

close proximity to a creek and subsequent efforts to repair damage. Conte maintains that she was not aware of any leak or potentially defective repair within the basement at the time of settlement. Further, Conte argues that Appellants had notice of the water filtration issues because she provided them with the B-Dry warranty showing that the basement was waterproofed and guaranteed to be leak-free for the life of the structure.

To establish a *prima facie* case of common law fraud, a plaintiff must show: (1) a false representation, usually one of fact; (2) made by the defendant with knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) action or inaction taken by the plaintiff in justifiable reliance upon the representation; and (5) damage as a result of such reliance.[36]

In determining whether a false representation was made, the Court may review evidence of overt misrepresentations, including evidence of "oral promises or representations ... made prior to the written agreement."[37] A false representation also may be established by evidence that a defendant deliberately concealed material facts, or was silent in the face of a duty to speak.[38]

The Court finds that Conte did not fraudulently misrepresent the basement's condition. As stated previously, Conte disclosed all known defects and repair efforts concerning the basement. Although the instant defects were latent, Appellants have not shown that Conte knew or should have known of their existence. Further, the evidence submitted by Appellants of estimates for repair of the various issues within the basement are dated at the earliest nine months after the May 31, 2012 settlement date. Appellants' photographical evidence, while clearly displaying mold, does not definitively establish that the defect existed at settlement.

---

[36] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

[37] *Anglin v. Bergold*, 1989 WL 88625, at *2 (Del. Super. Jun. 26, 1989) (*citing Scott–Douglas Corp. v. Greyhound Corp.*, 304 A.2d 309, 317 (Del. Super 1973)).

[38] *Stephenson*, 462 A.2d at 1074.

Conte presented Appellants with information that the basement leaked in the past and the waterproofing certification as evidence that it was resolved. The evidence presented does not persuade the Court that Conte's representations were knowingly false or that she fraudulently concealed a known defect.

Accordingly, the Court finds in favor of Conte.

## CONCLUSION

For the foregoing reasons, the Court finds in favor of Defendant-below, Appellee Elsie E. Conte and against Plaintiffs-below, Appellants Sheryl and Irwin Okin. Each party is ordered to bear their own costs.

**IT IS SO ORDERED this 14th day of July, 2015.**

Sheldon K. Rennie,
Judge